UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DAVID COBBLE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOSEPH R. BIDEN, JR., et al.,<br><br>　　　　Defendants. | CIVIL ACTION NO.<br>1:24-cv-02044-JPB |

## **ORDER**

This matter is before the Court on a frivolity determination pursuant to 28 U.S.C. § 1915(e)(2).  The Court finds as follows:

## **BACKGROUND**

On May 10, 2024, David Cobble ("Plaintiff") filed an application for leave to proceed *in forma pauperis* in this Court.  [Doc. 1].  On May 13, 2024, United States Magistrate Judge Christopher C. Bly granted Plaintiff's application, [Doc. 2], and Plaintiff filed his Complaint, [Doc. 3].[1]  Plaintiff brings this suit against fifty-nine defendants, including:  President Joseph R. Biden, Jr. ("Biden"), George Soros (founder of the nonprofit organization Open Society Foundations), Alexander Soros (chair of the Board of Directors of Open Society Foundations),

---

[1] Along with his Complaint, Plaintiff also attached several documents, including a "Memorandum of Law and Treatise," which the Court also reviewed.  See [Doc. 3-1].

several state elections officials and boards, the U.S. Department of Homeland Security, the director of the Democratic National Committee and the secretaries of state or commonwealth of nearly every state (collectively, "Defendants"). See id.

Specifically, Plaintiff alleges that Biden, Defendant Jamie Harrison and seventeen other Defendants, representing what Plaintiff identifies as "Democrat Trifecta States,"[2] misappropriated taxpayers' money "to facilitate an invasion of millions of illegal immigrants and, in blatant violation of federal law and Constitutional rights of Plaintiff and every American, register illegal immigrants to vote in federal/national elections to steal the elections for U.S. President and Congress from Plaintiff and the American people." Id. at 6–7. Plaintiff further contends that the remaining defendants—which he breaks down into "Republican Trifecta States" and "Mixed Government States"[3]—are "woefully unprepared, thus grossly negligent in dealing with the threat posed by Defendant Biden and his co-conspirators." Id. at 7. However, Plaintiff admits that these remaining defendants are not directly part of the "conspiracy" of the Democrat Trifecta States. Id.

---

[2] Plaintiff identifies the "Democrat Trifecta States" as the defendants listed as numbers 6–23 in his Complaint. See [Doc. 3, pp. 2–6].

[3] Plaintiff identifies the "Republican Trifecta States" as the defendants listed as numbers 35–59 in his Complaint and the "Mixed Government States" as the defendants listed as numbers 24–34 in his Complaint. See [Doc. 3, pp. 2–6, 15].

2

To support his claims, Plaintiff points to several of Biden's alleged wrongdoings to illustrate Biden's corruption and harm to the United States, but focuses primarily on Biden's policy of "normaliz[ing] illegal immigration" and "normaliz[ing] the practice of illegal immigrants to illegally vote in federal elections." Id. at 8. Plaintiff alleges that these actions, taken by Biden in conjunction with the seventeen Democrat Trifecta States, Defendants George and Alexander Soros (the "Soros Defendants") and the Democratic National Committee—are intended "to deny [Plaintiff's] right and all Americans' right[s] to an unadulterated, uncorrupted election process by actuating millions of illegal immigrants to vote in the 2024 elections for U.S. President and Congress." Id.

Plaintiff makes further allegations regarding spies and foreign operatives entering the United States, Chinese hackers undermining the Country and terroristic threats. Id. at 9. He also expresses concern that Biden will create "some pretext . . . in order to give him power to shut down and prevent the 2024 elections from taking place." Id. Plaintiff further alleges that the Democrat Trifecta States have "changed their laws specifically to make it easy for illegal immigrants to vote in federal elections" with the intent to commit election fraud in the 2024 elections and details specific election practices that he finds especially problematic. Id. at 10–11.

In addition to his election-related allegations, Plaintiff also contends that Biden, the Department of Homeland Security and the Soros Defendants are "destroying U.S. cities" by letting "millions" of illegal immigrants into the United States and allowing them to vote in elections. Id. at 11–13. Plaintiff also accuses the Soros Defendants of funneling money into Biden's "scheme to actuate millions of illegal immigrants to vote in the 2024 elections" and into the elections of "some seventy-five (75) 'pro-crime' District Attorneys and Attorneys General and mayors," creating "Leftist/woke/socialist propaganda and pro-crime machines to turn all U.S. cities into wastelands" and funding anti-Israel protests. Id. at 13–14. Finally, Plaintiff accuses the Republican Trifecta States and Mixed Government States of failing to take proper measures to "protect against the conspiracy of Defendant Biden and Defendant officials of the Democrat[ic] Party to facilitate election cheating and other heightened, very likely threats to the 2024 elections." Id. at 15.

In the section entitled "Relief Wanted," Plaintiff first requests that his case be certified as a class action under Federal Rule of Civil Procedure 23. Id. at 15–16. Then, Plaintiff asks the Court for injunctive and declaratory relief through several specific requests. See id. at 16–20. For instance, Plaintiff requests that this Court order all states to take or refrain from taking several actions pertaining to the

2024 election, including to: use "verified paper ballots only," require that that all individuals vote in-person on voting day and mandate that all voters produce "proof of U.S. citizenship" before casting their vote. Id. at 16–17. Plaintiff also requests that this Court take various actions pertaining to the Department of Homeland Security, including suspending and vacating Secretary Mayorkas's and President Biden's authority over the agency. Id. at 17–18. Plaintiff further asks for a "preliminary injunction to pause operations of all Soros political, nonprofit and social activity/operations." Id. at 19. Finally, Plaintiff also requests damages in the amount determined by the Court as well as "damages for [him]self and all Americans from any defendant who defies the Court's orders [and/or] becomes noncompliant." Id. at 20.

## DISCUSSION

Because Plaintiff filed this action *in forma pauperis*, the Court will review the Complaint under 28 U.S.C. § 1915(e)(2). According to this provision, the Court must dismiss a case if the action is frivolous, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This statute seeks "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and

because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Moreover, this Court recognizes that Plaintiff is *pro se*. As a result, this Court has an obligation to construe Plaintiff's pleadings liberally. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). This liberal construction, however, does not allow this Court to act as *de facto* counsel or rewrite otherwise deficient pleadings. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998).

Before a court may reach the merits of a case, it must first determine whether it has jurisdiction. See Lake Country Ests., Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 398 (1979). The issue of a plaintiff's standing "is a threshold jurisdictional question." Wiand v. ATC Brokers Ltd., 96 F.4th 1303, 1311 (11th Cir. 2024). Accordingly, regardless of whether any party raises it, this Court must first decide whether Plaintiff has Article III standing; if the Court determines that he does not, it must dismiss the case. See Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020).

"Article III grants federal courts the 'judicial Power' to resolve only 'Cases' or 'Controversies.' As a result, federal courts may exercise their power only for 'the determination of real, earnest, and vital controversy between individuals.'" Id.

6

(internal citation omitted) (quoting Chi. & Grand Trunk Ry. Co. v. Wellman, 143 U.S. 339, 345 (1892)).  As the Eleventh Circuit Court of Appeals has stated, "[u]nder settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements:  the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it."  Id. (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  The party which invokes the federal court's jurisdiction bears the burden of "establishing these elements to the extent required at each stage of the litigation."  Id. (citing Lujan, 504 U.S. at 561).  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  Malowney v. Fed. Collection Deposition Grp., 193 F.3d 1342, 1346 (1999).

The United States Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."  Lujan, 504 U.S. at 573–74.  Explained another way, although every citizen possesses the

right "to require that the Government be administered according to law . . . this general right does not entitle a private citizen to institute [a suit] in the federal courts." Lance v. Coffman, 549 U.S. 437, 440 (2007) (quoting Fairchild v. Hughes, 258 U.S. 126, 129–30 (1922)).

In the instant action, the Court finds that Plaintiff has pointed to no "injury in fact" to satisfy constitutional standing requirements. Plaintiff's claims of election interference by President Biden, the Democrat Trifecta States and the Department of Homeland Security via their alleged scheme to allow an influx of illegal immigrants to vote in the 2024 election fail to state the type of individualized harm required for Article III standing. See id. Similarly, Plaintiff's claims against the Republican Trifecta States and Mixed Government States also fail to adequately allege an "injury in fact" because they, too, are premised upon Plaintiff's generalized right to free and fair elections. Such harm, as noted above, is not the type of injury that confers Article III standing.

Plaintiff's allegations regarding the actions of the Soros Defendants suffer from the same defect. Namely, Plaintiff alleges that the Soros Defendants— through their nonprofit organization Open Society Foundations—conspired with Defendant Biden to "facilitate an invasion of millions of illegal immigrants to have them illegally vote in the 2024 elections" and that they have been buying news

outlets and putting out "Leftist/woke/socialist/biased propaganda" in violation of the First Amendment while also funding the elections of several "pro-crime" public officials.[4]  See [Doc. 3, pp. 12–15].  Like Plaintiff's allegations against the government officials and organizations noted above, his claims of election interference and public harm against the Soros Defendants fail to state the type of particularized injury which satisfies the Constitutional requirements of Article III standing.[5]  See Perkins v. Lukens Steel Co., 310 U.S. 113, 125 (1940) ("[T]o have

---

[4] Furthermore, to the extent that Plaintiff's claims against the Soros Defendants are premised upon the alleged violation of his Constitutional rights, such claims fail because the Soros Defendants are not state actors.  Cf. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 935 (1982) ("As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'") (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)); Manhattan Cmty. Access Corp. v. Halleck, 587 U.S. 802, 809 (2019) ("Under the Court's cases, a private entity may qualify as a state actor when it exercises 'powers traditionally exclusively reserved to the State.'" (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974))).  To the extent that Plaintiff alleges Constitutionally-based claims against the Democratic National Committee, such claims suffer from the same defect.

[5] Additionally, to the extent that Plaintiff's claims revolve around interference with the 2024 election and the candidacy of then-candidate Donald J. Trump, this Court finds that such claims are moot.  "In order for there to be a real case or controversy . . . the issues in play at the outset must remain alive.  Mootness doctrine ensures that a justiciable case or controversy is present 'at all stages of review.'"  Gagliardi v. TJCV Land Tr., 889 F.3d 728, 732 (11th Cir. 2018) (quoting Christian Coal. of Fla. Inc. v. United States, 662 F.3d 1182, 1190 (11th Cir. 2011)); see also United States v. Shenberg, 90 F.3d 438, 440 (11th Cir. 1996) (noting that federal courts lack subject matter jurisdiction where intervening events render a litigant's claims moot).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 226 F.3d 1208,

standing in court, [a plaintiff] must show an injury or threat to a particular right of their own, as distinguished from the public's interest in the administration of the law."); Lujan, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); cf. Gerow v. Newsom, No. 22-cv-2976, 2024 WL 3540561, at *6 (M.D. Fla. July 25, 2024) (finding that claims were not sufficiently particularized to confer Article III standing where a plaintiff alleged that the defendant's spouse operated a nonprofit entity which siphoned money from the state treasury to benefit the defendant's family).

Therefore, Plaintiff's claims against all Defendants must be dismissed because his "assertion of standing to bring this suit 'lacks an arguable basis either in law or in fact.'" Driessen v. Mia.-Dade Cnty. Sch. Bd., 520 F. App'x 912, 912–13 (11th Cir. 2013) (per curiam) (quoting Miller v. Donald, 541 F.3d 1091, 1100 (11th Cir. 2008)) (holding that a district court did not abuse its discretion for

---

1216 (11th Cir. 1996).  This Court takes judicial notice of the fact that the 2024 election has already occurred, and that Trump won the 2024 presidential election.  See Fed. R. Evid. 201(c)(1) (noting that a court may take judicial notice of adjudicative facts *sua sponte*).  As such, to the extent that Plaintiff's claims concern Defendants' actions or inactions to jeopardize the 2024 election, the Court finds that such claims are moot. Moreover, Plaintiff's claims for declaratory relief do not cure their mootness.  See Gagliardi, 889 F.3d at 735 ("An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief.  As with any federal suit, when a party seeks declaratory relief, the courts are required to examine whether there is an 'actual controversy,' without which a declaration may not issue.") (internal citation omitted).

dismissing a plaintiff's complaint as frivolous where the district court found that the plaintiff lacked standing).

Accordingly, the Court **DISMISSES** Plaintiff's Complaint without prejudice for lack of standing.

## CONCLUSION

For the foregoing reasons, this action is **DISMISSED**, without prejudice, because Plaintiff lacks standing to assert the claims set forth in his Complaint. As such, Plaintiff's Motion to Ban Mail-In-Ballots in 50 States, Consolidate Related Legal Action in 50 States, and Acknowledge Cyber Failures Portend Elimination of Elections or Interference [Doc. 8] is **DENIED** as moot. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 21st day of November, 2024.

_____
**J. P. BOULEE**
United States District Judge